UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ARIA C. MILLER,

                Plaintiff,                          **MEMORANDUM & ORDER**

      -against-                              24-CV-2834 (NRM) (JAM)

CAPITAL ONE FINANCIAL CORPORATION,

                Defendant.
-------------------------------------------------------------------X

**NINA R. MORRISON**, United States District Judge:

*Pro se* plaintiff Aria Miller brought this consumer protection action under the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, and the New York State General Business Law ("NYGBL").  For reasons discussed below, Defendant Capital One Financial Corporation's motion to dismiss is GRANTED, and this action is dismissed without prejudice.  However, the Court grants Miller leave to file a Second Amended Complaint within thirty days of the date of this Order, in the event that she is able to plead additional facts showing that she timely provided Capital One with written notice of the alleged billing error, as required by the FCBA.

## BACKGROUND

Plaintiff Aria Miller holds a Capital One Platinum Credit Card issued by Defendant Capital One Financial Corporation ("Capital One"), which she used to purchase items from an online women's clothing store ("Merchant"). Am. Compl. ¶ 9, ECF No. 9.[1]  According to her amended complaint, Miller returned the items after

---

[1] All page number pincites are given to the page numbers generated by the Electronic Case Filing System ("ECF").

they arrived later than expected and requested a refund from both the Merchant and from Capital One. *Id.* at ¶¶ 10–12, 15. Capital One stated that it required additional information to process the refund request. *Id.* at ¶¶ 19–20. However, Miller was unable to upload documents through the secure email link Capital One provided, and Capital One refused to accept supporting documents via any alternative methods. *Id.* at ¶¶ 20–22. The Merchant was unable to refund Miller's purchase because Capital One declined to process her refund request. *Id.* at ¶¶ 16–17. She has not received a refund from either the Merchant or Capital One, as of the filing of her amended complaint. *Id.* at ¶ 25.

Miller originally filed this action on April 15, 2024, bringing claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. section 1601, as well as the FCBA and NYGBL. *See* Compl. ¶ 1, ECF No. 1 at 6. The Court dismissed her complaint with leave to amend *sua sponte* on November 1, 2024, for lack of subject matter jurisdiction. Mem. & Order, ECF No. 5. In the same order, the Court granted Miller leave to proceed *in forma pauperis*. *Id.* at 1.

On December 17, 2024, Miller filed her amended complaint, which was served upon Capital One on April 21, 2025. *See* ECF No. 24. On July 28, 2025, Capital One filed the bundled motion to dismiss, pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6). *See* Notice Def.'s Mot. Dismiss Am. Compl. ("Mot."), ECF No. 26; Def.'s Mem. Supp. Mot. Dismiss Am. Compl. ("Mem."), ECF No. 26-1; Pl.'s Opp'n Mot. Dismiss ("Opp'n"), ECF No. 25; Def.'s Reply Mem. Law Further Supp. Mot. Dismiss Am. Compl. ("Reply"), ECF No. 28.

In her opposition to Capital One's motion to dismiss, Miller offers more details concerning her billing dispute with the Merchant and Capital One.[2]  She allegedly purchased the items on July 3, 2023, and they did not arrive until July 20, 2023. Opp'n at 7.  On July 21, 2023, she communicated to the Merchant her desire to return the purchased items, and on July 26, 2023, Capital One issued a temporary credit to her account.  *Id.*; Opp'n Ex. 6, ECF No. 25 at 35; Opp'n Ex. 2, ECF No. 25 at 66; Opp'n Ex. 1, ECF No. 25 at 82.  Miller also received letters from Capital One on July 26, 2023, notifying her of the credit and offering an update regarding her dispute with the Merchant.  *See* Opp'n Ex. 7, ECF No. 25 at 71, 73.  On August 14, 2023, Capital One informed her that it was reapplying the charge to her account and closing her case.  Opp'n Ex. 8, ECF No. 25 at 46.  Miller claims to have disputed the charges with Capital One via phone and email correspondence, within sixty days of August 14, 2023.  Opp'n at 7.

Miller seeks a $399.80 refund (the disputed charge amount), a refund on any interest resulting from the disputed charge, $100,000 in punitive damages, and fees and costs.  Am. Compl. at 3.

## **STANDARD OF REVIEW**

When evaluating a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), the Court must treat the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Sacerdote v. N.Y. Univ.*,

---

[2] Miller also specifies that she brings state law claims under NYGBL section 349, after originally pleading violations of unspecified provisions in her amended complaint.  *See* Am. Compl. at 1, 3; Opp'n at 8–9.

9 F.4th 95, 106–07 (2d Cir. 2021). Along with the complaint and documents it incorporates by reference, the Court may consider "documents 'integral' to the complaint and relied upon it, even if not attached or incorporated by reference." *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). Moreover, "[a] court may consider papers a *pro se* Plaintiff submits in opposition to a motion to dismiss so long as they are consistent with the allegations in the complaint." *Khater v. API Indus., Inc.*, No. 16-CV-6695 (CS), 2017 WL 6515531, at \*2 (S.D.N.Y. Dec. 19, 2017).

A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When filed by a *pro se* plaintiff, the complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, this leniency does not exempt *pro se* plaintiffs from complying with relevant procedural rules and requirements of substantive law. *See Ezeiruaku v. Am. Express Co.*, No. 20-CV-4004 (LJL), 2020 WL 6135794, at \*2 (S.D.N.Y. Oct. 19, 2020).

## DISCUSSION

### I.   The Fair Credit Billing Act

4

Miller argues Capital One violated the FCBA by failing to reasonably investigate billing errors in her credit card statement, despite being notified of her refund request. *See* Am. Compl. at 3; Opp'n at 7–8. Capital One argues that the complaint fails to state a claim under the FCBA because it does not allege 1) a billing error, 2) that Plaintiff provided written notice under the statute, or 3) that Capital One failed to comply with the statute's procedural requirements. *See* Mem. at 12–13.

The FCBA was enacted in 1974 and amended the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*; it is governed by Federal Reserve Board regulations, 12 C.F.R. § 226.13. The FCBA provides consumers with a mechanism for resolving disputed charges involving personal, "open-end credit" accounts (e.g., credit card accounts). *See Abergel v. Santander Bank*, No. 19-CV-6535 (CM), 2019 WL 4141668, at *2 (S.D.N.Y. Aug. 30, 2019). Within sixty days of receiving "a statement of the [consumer's] account" containing a "billing error," the consumer must provide the creditor with written notice "indicating the amount of the error and the reasons supporting [the consumer's] belief that it is an error." *Am. Express Co. v. Koerner*, 452 U.S. 233, 235–36 (1981). Within thirty days, the creditor must acknowledge receipt of the notice; and within ninety days (or two complete billing cycles), the creditor must conduct a "reasonable investigation" and either remedy the error or explain in writing why it believes the original statement was correct. 12 C.F.R. § 226.13(c), (f); *see also Koerner*, 452 U.S. at 236–37.

To state a claim under the FCBA, a plaintiff must allege "(1) the existence of a billing error; (2) plaintiff's timely notification of the billing error; and (3) failure of the

5

card issuer to comply with the procedural requirements of Section 1666." *Beaumont v. Citibank (S.D.) N.A.*, No. 01-CV-3393 (DLC), 2002 WL 483431, at *3 (S.D.N.Y. Mar. 28, 2002).

### A. Billing Error

Capital One contends that Miller's amended complaint fails to identify a billing error, instead characterizing her allegations as claiming "she is entitled to a refund for a purchase she made."[3] Mem. at 12. Miller states that she was notified of a billing error on August 14, 2023, after the previously refunded transaction appeared on her credit card statement. Opp'n at 5.

The FCBA offers various examples of what may constitute a "billing error" under the statute, including "[a] reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction." 15 U.S.C. § 1666(b)(3); *see also* 12 C.F.R. § 226.13(a)(3). According to the commentary to the FCBA's regulations, goods that are "not accepted" or "not delivered as agreed" include those that are delivered late or which the consumer refuses because they do not comply with the contract. *See* 12 C.F.R. § 226, Supplement I, Subpart B, cmt. 13(a)(3)(1)(i). Furthermore, "[w]hether acceptance occurred is determined by state or other applicable law." *Id.* at cmt. 13(a)(3)(1)(ii).

---

[3] In its reply, Capital One further argues Miller agreed to receive store credit — and thus, conceded that she was not entitled to a refund — by agreeing to accept store credit for her return. *See* Reply at 5. This mischaracterizes Miller's email correspondence with the Merchant, in which she repeatedly rejects the store credit offer from the Merchant, and the Merchant eventually agrees to refund her purchase. *See* Opp'n Ex. 6, ECF No. 25 at 11–16.

Miller alleges that she refused clothing items because they were delivered "later than expected," Am. Compl. ¶ 10, but was charged for these items regardless. She also states that she mailed the items back to the Merchant and that the Merchant agreed to refund her purchase. *Id.* ¶¶ 15–16. While there was an ongoing dispute between Miller and the Merchant — and ongoing communications with Capital One regarding this dispute — the erroneous charges only appeared on her credit card statement for the July 27, 2023 to August 26, 2023 period, after Capital One reapplied the charges on August 14, 2023. *See* Opp'n Ex. 5, ECF No. 25 at 41; Opp'n Ex. 8, ECF No. 25 at 46, 54. It was at this point that she received a statement reflecting charges for goods "not accepted" and "not delivered as agreed." *See* 15 U.S.C. § 1666(a); 12 C.F.R. § 226.13.

These allegations, taken together, are sufficient to constitute a billing error under the FCBA. *See* 15 U.S.C. § 1666(b)(3); 12 C.F.R. § 226, Supplement I, Subpart B, cmt. 13(a)(3)(1)(i); *see also* N.Y. U.C.C. § 2-606 (acceptance defined in part by when the buyer "after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity").

*B. Written Notice*

Less clear is whether Miller provided timely, written notice to Capital One regarding the existence of a billing error. Miller alleges that she identified the billing error on August 14, 2023, and that "Capital One was notified . . . within the 60-days." Opp'n at 5; *see also id.* at 7 ("The Plaintiff verbally and electronically notified the

7

Defendant of the disputed transaction and the billing error within 60 days of the transaction."). She further alleges that she "contacted [Capital One] again" regarding her dispute "via phone and additional email correspondence" after identifying the billing error. *Id.* at 7.

Capital One argues that Miller's amended complaint and her opposition to the motion to dismiss fail to identify "(1) the specific date of the account statement where Plaintiff first noticed the alleged error; (2) the specific date Plaintiff notified Capital One of the alleged error; and (3) the means by which Plaintiff allegedly notified Capital One of her dispute." Reply at 6.

The FCBA requires a consumer to provide a "written notice" of a billing error to the creditor within sixty days of the creditor "transmit[ing] . . . a statement of the [consumer's] account in connection with an extension of consumer credit." 15 U.S.C. § 1666(a); *see also* 12 C.F.R. § 226.13(b) (notice must be received within sixty days after the creditor transmits the first periodic statement reflecting the billing error). If a creditor states that it accepts billing error notice electronically within its billing rights statement, this may constitute written notice under the FCBA. *See* 12 C.F.R. § 226, Supplement I, Subpart B, cmt. 13(b).

Even construed liberally, with all inferences in her favor, the allegations in Miller's amended complaint and opposition to Capital One's motion to dismiss are insufficient to plead written notice under the FCBA. Capital One is incorrect to assert that Miller failed to identify the account statement which contained the billing error. *See* Opp'n Ex. 5, ECF No. 25 at 41. However, it rightly points out that — without

more information about nature of Miller's notice to Capital One — her amended complaint fails to state an FCBA claim. *See White v. Chase Bank USA, N.A.*, No. 16-CV-00176 (BR), 2017 WL 1131898, at *3 (E.D.N.C. Mar. 24, 2017) ("Without factual detail as to the time, substance, and form of the notice, the court cannot infer that plaintiff provided [defendant bank] with requisite written notice of a billing error."); *Ezeiruaku*, 2020 WL 6135794, at *3 (noting how certain allegations within plaintiff's complaint failed to state a claim because they failed to indicate whether Defendant received written notice of a  billing error).

Here, the amended complaint does not specify whether Miller's email correspondence to Capital One provided notice of the billing error or if it simply discussed logistical issues, following her ostensible oral notice.  *See* Am. Compl. ¶¶ 18–22 (discussing Plaintiff's conversation with Defendant and her response to Defendant's email containing a secure link for document upload).  The amended complaint also does not state whether Miller provided "a signed and dated letter that include[d her] case number, the merchant's name, the date of the transaction, and the disputed amount by 09/04/2023," as Capital One instructed, or some equivalent written notice that would satisfy the FCBA's requirements.  *See* Opp'n Ex. 8, ECF No. 25 at 46.  Without non-conclusory allegations of written notice, Capital One's obligations were not triggered, and Miller's amended complaint fails to state a claim under the FCBA.

C. *Reasonable Investigation*

9

The Court need not address whether Capital One complied with the FCBA's procedural requirements, given the analysis above. However, it is worth mentioning that — in characterizing Miller's amended complaint as "aris[ing] solely out of [the] decision to not issue her refund" — Capital One minimizes its obligations under the statute. *See* Mem. at 12–13.

In conducting a "reasonable investigation," a creditor "may not automatically deny a claim based solely on the consumer's failure or refusal to comply with a particular request." 12 C.F.R. § 226, Supplement I, Subpart B, cmt. 13(f)(3). Additionally, when investigating the alleged non-delivery of goods or services, the creditor "shall not deny the assertion unless it conducts a reasonable investigation and determines that the property or services were actually delivered, mailed, or sent *as agreed*." *Id.* at cmt. 13(f)(3)(ii) (emphasis added). In other words, proof of delivery does not negate the existence of a billing error, if the buyer refused to accept the goods or if the goods were not delivered in accordance with the contract. *See* 15 U.S.C. § 1666(b); *see also Rigby v. FIA Card Servs., N.A.*, 490 F. App'x 230, 236 (11th Cir. 2012) (noting how allegations of defendant "fail[ing] to follow-up when presented with information that could have conclusively demonstrated non-delivery" support the inference that the investigation was "not 'reasonable'").

In its August 14, 2023 letter, Capital One explained that it reapplied charges to Miller's account after the Merchant provided "[c]onfirmation showing no cancellation per policy was received." Opp'n Ex. 8, ECF No. 25 at 46. Miller also alleged that she attempted to provide Capital One with information to support her

refund request, and Capital One refused to accept this documentation via any alternate method after Miller encountered technical difficulties. Am. Compl. ¶ 22.

Had Miller's amended complaint offered sufficient facts to plead written notice, she may have plausibly alleged that Capital One failed to conduct a reasonable investigation. It does not appear that Capital One took any steps to investigate her refund request after August 14, 2023. And not only did Capital One's August 14, 2023 letter contain evidence of Miller's non-acceptance, *see* Opp'n Ex. 8, ECF No. 25 at 56, but it appears that Capital One ignored Miller's efforts to provide documentation to that effect. The standard under the FCBA is not whether a particular merchant does or does not have a cancellation and return policy. It is whether goods and services are delivered as agreed, and if not, whether the consumer has been charged in error. If its duties were triggered under the FCBA, Miller may have pled sufficient facts to demonstrate that Capital One's investigation was unreasonable under the circumstances.

*D. Statute of Limitations*

A final note regarding Capital One's statute of limitations argument: Capital One argues that Miller's FCBA is time-barred because she was obligated to commence her action within one year of opening her Platinum Credit Card account. *See* Mem. at 13–14. It cites different opinions within the Second Circuit that state a TILA claim must be brought within one year of entering into a loan agreement or receiving an extension of a line of credit. *Id.* at 13 (citing *Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11, 12–13 (2d Cir. 2018); *Maropakis v. Bank of New York Mellon*

11

*Tr. Co., N.A.*, No. 13-CV-4744 (ERK) (VVP), 2015 WL 13742419, at \*4 (E.D.N.Y. May 4, 2015); *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 392 (E.D.N.Y. 2014)). These cases all involve closed-end credit transactions — specifically, mortgage loans — that are distinguishable from the present action. *See, e.g.*, *Latouche*, 752 F. App'x at 13 ("It is well-settled law that *in closed-end credit transactions*, like a mortgage loan, the date of the occurrence of violation is no later than the date the plaintiff enters the loan agreement." (citation modified) (emphasis added)); *Maropakis*, 2015 WL 13742419, at \*4 (calculating the statute of limitations with respect to a mortgage loan); *Barnett*, 60 F. Supp. at 392–93 (same).

The present case involves an open-end credit account, given that it concerns credit card transactions. *See* 15 U.S.C. § 1602(j) ("The term 'open end credit plan' . . . mean[s] a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance."); *id.* § 1666(d) ("[A] creditor operating an open end consumer credit plan may not, prior to the sending of the written explanation or clarification required under paragraph (B)(ii), restrict or close an account with respect to which the obligor has indicated pursuant to subsection (a) that he believes such account to contain a billing error solely because of the obligor's failure to pay the amount indicated to be in error."); *see also Koerner*, 452 U.S. at 237 ("Every creditor under an 'open end consumer credit plan' must disclose the protections available under [the FCBA] to the obligor.").

As the Second Circuit has held, "[p]rivate actions based on violations of TILA must be brought 'within one year from the date of the occurrence of the violation.'" *Latouche*, 752 F. App'x at 12–13. At earliest, this would be the date of the disputed transaction, if not after Miller saw evidence of a billing error. *See, e.g., Iosilevich v. Hofstra Univ.*, No. 20-CV-5085 (LDH), 2022 WL 4539679, at *2 (E.D.N.Y. Sep. 28, 2022) (calculating the statute of limitations from the alleged date of the disputed transaction); *Douce v. Banco Popular N. Am.*, No. 05-CV-8979 (LAK), 2006 WL 2627966, at *8 (S.D.N.Y. Sep. 12, 2006) (calculating the statute of limitations from when the plaintiff was aware defendant had not met its FCBA procedural obligations). In any event, the statute of limitations on Miller's FCBA claim did not begin to run when Miller opened her credit card account. Because the disputed transaction occurred on July 3, 2023, and she alleges receiving notice of a billing error on August 14, 2023, Miller's action likely would have fallen within the statute of limitations, had she stated an FCBA claim.

## II.   New York General Business Law

### A. Diversity Jurisdiction

Miller asserts the Court's diversity jurisdiction over her state law claims under the NYGBL. *See* Am. Compl. ¶¶ 5–7. This requires the parties to be completely diverse and the amount in controversy to exceed $75,000. *See* 28 U.S.C. § 1332(a)(1). Here, Miller's NYGBL claim fails to meet or exceed the $75,000 statutory threshold.

NYGBL section 349 allows an injured plaintiff to recover actual damages. N.Y. Gen. Bus. § 349. The Court has discretion to "increase the award of damages to

an amount not to exceed three times the actual damages up to one thousand dollars" if the Defendant's violation was knowing and willful. Miller's actual damages (allegedly $399.80) — and any potential treble damages — fall well below the amount in controversy threshold for federal diversity jurisdiction.

The New York Court of Appeals has permitted the recovery of punitive damages under NYGBL section 349, despite the statute's silence on the matter. *See Karlin v. IVF Am.*, 712 N.E.2d 662, 666 (N.Y. 1999). These count towards the amount in controversy supporting diversity jurisdiction; however, "the Court is not obligated to accept, on face value, a claimed amount of punitive damages, particularly where there would be no diversity without such damages." *Cohen v. Narragansett Bay Ins. Co.*, No. 14-CV-3623 (PKC), 2014 WL 4701167, at *3 n.4 (E.D.N.Y. Sep. 23, 2014).

Here, Miller's claim for punitive damages is 71.4 times greater than her actual and potential treble damages combined. This exceeds the "single-digit ratio between punitive and compensatory damages" ordinarily required for such an award to comport with due process. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425–26 (2003). Accordingly, it is not reasonably probable that Miller's damages will exceed the $75,000 threshold, and this Court likely does not have diversity jurisdiction over her NYGBL claim. *See* Mem. & Order at 3 ("The party claiming diversity jurisdiction 'has the burden of proving that it appears to a reasonable probability' that the plaintiff actually could get damages greater than $75,000." (quoting *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996)).

14

*B. Supplemental Jurisdiction*

Where a federal district court otherwise has jurisdiction over the action, it may choose to exercise supplemental jurisdiction over related state-law claims. *See* 28 U.S.C. § 1367(a) ("Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

Here, however, Miller has failed to state a claim for relief under the FCBA and has not shown any other independent basis for jurisdiction over her NYGBL claim. Thus, in the interests of judicial economy, the Court does not reach that aspect of Capital One's motion that challenges whether Miller has stated a claim for relief under the NYGBL; nor does the Court here decide whether, if she has met the pleading requirements for her NYGBL claim, the Court should exercise supplemental jurisdiction over that claim.

## CONCLUSION

For the reasons set forth above, Capital One's motion to dismiss is GRANTED, and this action is dismissed without prejudice for failure to state a claim pursuant to FRCP 12(b)(6) and for lack of subject matter jurisdiction pursuant to FRCP 12(h)(3).

If she wishes to file a second amended complaint with respect to her FCBA claim, Miller shall do so within 30 days from the date of this Memorandum and Order. The complaint must include sufficient facts to demonstrate that Miller (1) notified

15

Capital One of a billing error "in writing" — containing "the amount of the billing error and reasons for believing that it is an error" — and (2) did so "within sixty days" of receiving an account "statement containing the alleged error."  15 U.S.C. § 1666(a).

If Plaintiff fails to comply with this order within the time allowed, the Court shall direct the Clerk of Court to enter judgment and close the case.  All further proceedings shall be stayed for 30 days.

The Court certifies pursuant to 28 U.S.C. section 1915(a)(3) that any appeal would not be taken in good faith and therefore in forma pauperis status is denied for purpose of an appeal.  *See Coppedge v. United States*, 269 U.S. 438, 444–45 (1962).

The Clerk of Court is requested to mail a copy of this Order to Plaintiff at the address provided and note the mailing on the docket.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　_/s/ Nina R. Morrison_
　　　　　　　　　　　　　　　　　　　　NINA R. MORRISON
　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated:　　　March 4, 2026
　　　　　　Brooklyn, New York

16